[Crim. No. 7443. First Dist., Div. One. Mar. 11, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH N. GAMBOS, Defendant and Appellant.

## Counsel

Herbert W. Yanowitz, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Jerome C. Utz, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**ELKINGTON, J.**—Defendant Joseph N. Gambos appeals from a judgment based on a jury verdict finding him guilty of possession of heroin for sale, a violation of Health and Safety Code section 11500.5.

The facts are substantially undisputed. While on parole from state prison, to which he had been committed for a narcotic offense, Gambos lived in a

San Francisco apartment with a woman friend named Joyce. A condition of his parole was that he take periodic "Naline" tests for the purpose of determining whether he was using heroin. Since Gambos had failed to appear for the tests over a considerable period of time, his parole agent concluded that he was again using narcotics. On February 28, 1967, with San Francisco police officers, the agent went to Gambos' apartment and rang the bell which was answered by Joyce. The agent explained the purpose of the visit and advised her that they were going to search the premises for narcotics. The officers entered, found Gambos not to be at home, and searched the apartment. The search first uncovered a small quantity of heroin and a hypodermic needle in a kitchen drawer. Upon its discovery Joyce explained that the items found "in the kitchen were hers." Later under a mattress in the bedroom four ounces of cut heroin was found; referring to that substance the lady "said she didn't know anything about it." When Gambos later returned to the apartment he was arrested.

Joyce did not appear at the trial. Gambos did not testify, except out of the presence of the jury on the issue of probable cause for the search. However, a state prison inmate called by the defense told the jury that early on the day of the search, February 28, 1967, he had visited the apartment expecting Gambos to give him a ride home. Finding his friend to be out he visited with Joyce for awhile and then decided to call a taxicab. He had a package which he did not wish to carry in the cab so he "asked Joyce if she would hold onto it and stash it some place and I would be back later to pick it up." The package contained the four ounces of heroin which was later that day found under the mattress.

At the trial Gambos' counsel, out of the hearing of the jury, announced an intention to establish on cross-examination of a police officer that Joyce had stated that the heroin found in the kitchen drawer belonged to her. His theory was that as a "declaration against penal interest," the statement, although hearsay, was admissible. No contention was then or thereafter made that Joyce was unavailable as a witness. The district attorney responded, "I am not going to object if you ask the question, but you opened the door; that allows me to elicit the entire conversation." The remainder of the "conversation" sought to be elicited was Joyce's later declaration that she knew nothing about the heroin found under the mattress. Defense counsel then established before the jury that Joyce had claimed ownership of the heroin found in the kitchen. On redirect examination by the district attorney, and over objection of defendant, the witness then testified that Joyce "said she didn't know anything about" the material found under the mattress.

Gambos contends that the court erred in allowing the redirect examination concerning the larger quantity of narcotics found in the search. We agree that it was error.

■ Hearsay declarations against the penal interest of the declarant are admissible in this state under the conditions set up in Evidence Code section 1230.[1] One of the conditions is the "unavailability" of the declarant as a witness. (Cf. *People* v. *Spriggs,* 60 Cal.2d 868 [36 Cal.Rptr. 841, 398 P.2d 377], decided prior to the adoption of the Evidence Code.) ■ As no showing of Joyce's unavailability was made, her statement of ownership of the "kitchen drawer" narcotics would ordinarily be inadmissible. However, the district attorney expressly waived objection expecting thereby that "a door would be opened" to the admission of other improper evidence.

But no "door was opened." ■ By allowing objectionable evidence to go in without objection, the non-objecting party gains no right to the admission of related or additional otherwise inadmissible testimony. The so-called "open the door" or "open the gates" argument is "a popular fallacy." (See *People* v. *Johnson,* 229 Cal.App.2d 162, 169-170 [40 Cal.Rptr. 105]; *Fortner* v. *Bruhm,* 217 Cal.App.2d 184, 189-190 [31 Cal.Rptr. 503]; *People* v. *Parrella,* 158 Cal.App.2d 140, 147 [322 P.2d 83]; *People* v. *Arends,* 155 Cal.App.2d 496, 508-509 [318 P.2d 532]; *People* v. *Chandler,* 152 Cal.App.2d Supp. 916, 919-920 [313 P.2d 223]; *People* v. *Heckford,* 149 Cal.App.2d 250, 255 [308 P.2d 497]; *Dastagir* v. *Dastagir,* 109 Cal. App.2d 809, 814-815 [241 P.2d 656]; *People* v. *McDaniel,* 59 Cal.App.2d 672, 677 [140 P.2d 88].)

■ For quite another reason the redirect examination by the district attorney was improper. Evidence Code section 356 provides: "Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence." Section 356 is a substantial reenactment of Code of Civil Procedure, section 1854, repealed effective January 1, 1967.

By its terms section 356 allows further inquiry into otherwise inadmissible matter only, (1) *where it relates to the same subject,* and (2) it is necessary to make the already introduced conversation *understood.* Thus it has been

---

[1]Evidence Code section 1230 states: "Evidence of a statement by a declarant having sufficient knowledge of the subject is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and the statement, when made, was so far contrary to the declarant's pecuniary or proprietary interest, or so far subjected him to the risk of civil or criminal liability, or so far tended to render invalid a claim by him against another, or created such a risk of making him an object of hatred, ridicule, or social disgrace in the community, that a reasonable man in his position would not have made the statement unless he believed it to be true."

held: the court must exclude such additional evidence if not relevant to the conversation already in evidence. (*Witt* v. *Jackson,* 57 Cal.2d 57, 67 [17 Cal.Rptr. 369, 366 P.2d 641]; *People* v. *King,* 240 Cal.App.2d 389, 405 [49 Cal.Rptr. 562]; *Mooren* v. *King,* 182 Cal.App.2d 546, 550 [6 Cal.Rptr. 362]; *Rosenberg* v. *Wittenborn,* 178 Cal.App.2d 846, 852 [3 Cal.Rptr. 459]); the new evidence must shed light on that which is already admitted (*People* v. *King, supra,* 240 Cal.App.2d 389, 405); and it must be necessary to make the earlier conversation understood or to explain it (*Witt* v. *Jackson, supra; Magee* v. *Wyeth Laboratories, Inc.,* 214 Cal.App.2d 340, 355; [29 Cal.Rptr. 322]; *People* v. *Albert,* 182 Cal.App.2d 729, 741 [6 Cal.Rptr. 473]; *Rosenberg* v. *Wittenborn, supra.*) *People* v. *Mahach,* 65 Cal.App. 359, 382 [224 P. 130], discussing a ruling under the earlier Code of Civil Procedure section 1854, stated: "The court by its rulings subjected that section to a misinterpretation of its purpose and scope. What is meant thereby is that where a part of a conversation or a writing material and relevant to the issues of a case is given in evidence, the other parts of such conversation or writing having relevant reference to the part given may also be introduced. If the part not given is explanatory of or in any way qualifies or modifies the part given, then, in such case, the part not given by the witness may be shown. It was certainly never intended that under the guise of said section there may be lugged into the record of a case a mass of irrelevant and incompetent testimony which might have a tendency to militate seriously against the rights of the party against whom it was admitted."

Joyce's second statement, later in time, made in another room of the apartment, concerning a different parcel of narcotics, and not a "declaration against penal interest," was irrelevant to the earlier conversation. Nor did it in any way tend to explain her statement of ownership of the narcotics found in the kitchen drawer. It was hearsay evidence, rendered inadmissible by the provisions of Evidence Code section 1200.

The prejudice resulting from the error is obvious. Joyce's confession of ownership of the smaller container of narcotics, followed by her disclaimer of any knowledge of the larger package, dramatically pointed to the guilt of Gambos who was the only other occupant of the apartment. And it tended to discredit the testimony of the defendant's only witness, who said he had given the larger quantity of narcotics to Joyce to hold for him.

For the reasons stated the judgment must be reversed.

We shall discuss certain other claims of error made by Gambos as the circumstances upon which they are based may recur on a retrial.

The first relates to the Uniform Business Records as Evidence Act, now codified in California as Evidence Code, sections 1270-1272. For the pur-

pose of establishing unexplained income and assets not reasonably accounted for by Gambos' parole job (see *People* v. *Haynes,* 253 Cal.App.2d 1060, 1064 [61 Cal.Rptr. 859]), the prosecution, under sections 1270-1272, offered evidence of his recent purchase of a Cadillac automobile. It is very doubtful that a proper foundation was laid for the admission of this evidence. ■ While much discretion in this area is reposed in the trial court, nevertheless, particularly in criminal cases where the evidence bears closely on the question of culpability, and when objected to as here, the court should carefully inquire into the existence of the conditions of section 1271.[2] On a retrial this presumably will be done. ■ We find no merit in the contention that the Uniform Business Records as Evidence Act necessarily violates the constitutional right to confrontation by witnesses. Since its initial enactment in California in 1941 as Code of Civil Procedure sections 1953e-1953h, the act has been consistently applied in criminal cases. Experience has shown that business entries made under circumstances "such as to indicate [their] trustworthiness" are generally far more reliable than the fallible human memories of those who made them. This greater certainty equally benefits criminal defendants and is otherwise in the interest of justice. We hold that Evidence Code, sections 1270-1272 *when properly applied* are without constitutional fault.

■ No merit is found in the contention that the trial court erred in refusing a stipulation that Gambos had knowledge of the narcotic nature of heroin, thus improperly permitting the prosecution to produce evidence of his narcotic usage, addiction, and record. Gambos' proffered stipulation was conditioned upon the prosecution being "prevented from utilizing or commenting on the said stipulation at any time during the course of the trial."

■ An essential element of the crime of possession of narcotics is knowledge by the accused of the narcotic nature of the subject substance. (*People* v. *Winston,* 46 Cal.2d 151, 158-161 [293 P.2d 40].) In a case such as that before us a jury would properly be instructed to acquit in the absence of proof of such knowledge. ■ It follows that the prosecution is entitled to, indeed must, make such proof. To avoid unnecessary prejudice to the accused, such proof may be made by his stipulation, in which event further evidence, such as prior narcotic convictions, of the necessary knowledge is foreclosed. (*People* v. *Gonzales,* 262 Cal.App.2d 286, 289-290 [68 Cal.

---

[2]Evidence Code section 1271 states: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if:

(a) The writing was made in the regular course of a business;

(b) The writing was made at or near the time of the act, condition, or event;

(c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and

(d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

Rptr. 578]; *People* v. *Spencer,* 140 Cal.App.2d 97, 102-105 [294 P.2d 997].) But in such a case the stipulation may be treated as evidence, or at least as a substitute for evidence. The stipulation must be made known to the jury, and the district attorney must be permitted to point out that a necessary element of the charge, i.e., knowledge of the narcotic nature of the substance, is established by the stipulation. Gambos' fears that the prosecution might "improperly" comment on the stipulation are without basis; we may assume that any such misconduct will be prevented or met with appropriate measures by the trial court. ■■■ The subject stipulation was reasonably unacceptable and there was no error in its rejection.

*People* v. *Gonzales, supra,* 262 Cal.App.2d 286, and *People* v. *Gregg,* 266 Cal.App.2d 389 [71 Cal.Rptr. 920], relied upon by Gambos, do not support his argument. In *Gonzales,* an *unconditional* stipulation to the required knowledge, was erroneously rejected. In *Gregg,* direct evidence of the circumstances of defendant's delivery of the subject narcotic, if believed, conclusively established the required knowledge, thus rendering a prejudicial drawn out cat and mouse type of cross-examination of the defendant on the same subject, unnecessarily cumulative and erroneous.

■■■ No error resulted from acceptance of the testimony of Inspector Martin, trained and experienced in narcotic law enforcement, that in his opinion the large amount of heroin found in Gambos' apartment was held for sale. (See *People* v. *Grant,* 1 Cal.App.3d 563, 570 [81 Cal.Rptr. 812]; *People* v. *Allen,* 254 Cal.App.2d 597, 603 [62 Cal.Rptr. 235].)

■■■ The contention that the search of Gambos' apartment was without probable cause and violative of the Fourth Amendment is without factual or legal basis. His argument is well answered in *People* v. *Thompson,* 252 Cal.App.2d 76, 84-85 [60 Cal.Rptr. 203], where Presiding Justice Molinari, speaking for this division of our court, said: "It is well established that although a parolee is entitled to basic rights entitling him to constitutional protection against arbitrary or oppressive official action [citations] these rights are not necessarily tested by the same rules which apply to citizens who are possessed of full civil rights. [Citations.] [¶] The rationale underlying this principle is that a parolee is at all times in *custodia legis.* Although he is not a prison inmate in the physical sense, he is serving the remainder of his term outside rather than within the prison walls. [Citations.] Accordingly, so far as necessary for the maintenance of parole guardianship, the status of a parolee as a prisoner is no different than that of one who remains in confinement and, therefore, for the purpose of maintaining the restraints and social safeguards accompanying such status, the correctional authorities who supervise the parolee on parole may subject him, his home and his effects to such constant or occasional inspection and search as may seem advisable to them. [Citations.] [¶] In the light of the foregoing it has been held that a parole

officer needs neither a search warrant nor consent of a parolee in order to search the latter's premises [citations], nor is he bound by the requirement of reasonable or probable cause in conducting a search. [Citations.]"

Contrary to Gambos' contention his conviction was amply supported by substantial evidence.

Since the circumstances upon which other claims of error are based will probably not recur at the next trial, we refrain from any discussion of such points.

The judgment is reversed.

Molinari, P. J., and Sims, J., concurred.