[Crim. No. 35339. Second Dist., Div. One. May 8, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT GOSS, JR., Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Janice L. Feinstein, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, John R. Gorey and William H. Davis, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

LILLIE, J.—A jury acquitted defendant on count I (assault with a deadly weapon on Robert Carter) and found him guilty on count II (possession of a firearm by an ex-felon [assault with a deadly weapon, 1973]). He appeals from the judgment.

The following summary of evidence relates only to count II. About 1 a.m. on August 11, Robert Carter was in the backyard of the Sanford home feeding a puppy when he heard defendant's voice coming from the Barringer home next door; he recognized it as that of defendant having known him during the time he (Carter) had lived in the Sanford house; he then heard a gunshot, looked in the direction of the Barringer house, heard another gunshot and saw a flash from a window;[1] the shots came within three or four feet of him. Carter went into the Sanford house and as he and Sanford stood in the back doorway, he saw defendant standing on the Barringer porch holding a gun, then raise the gun into the air, fire it and turn around; when he heard the shot, he saw a flash from the gun.

Sanford heard several gunshots; he got up and with Carter proceeded to and stood in the back doorway; he saw defendant standing in the back doorway of the Barringer porch approximately 25 feet away holding a gun and saw and heard defendant fire the gun up in the air.

Police arrived about 1:30 a.m. and arrested defendant; an officer asked him if he had a gun on the premises; he said he did not, and "Go

[1]Subsequently, Carter and Sanford examined the screen in the Barringer house and found two holes in it.

ahead and search, if you want." A handgun was on the bed and Mrs. Barringer "grabbed the gun off the bed" and placed it in a drawer of a nightstand; an officer observed her do this and recovered the gun containing three live rounds of ammunition and three empty castings, and a box of .22 caliber ammunition.

In 1973 in the Los Angeles Superior Court, defendant was convicted of assault with a deadly weapon (Pen. Code, § 245, subd. (a)), a felony.

For the defense, Mrs. Barringer testified that defendant was her boyfriend; on the night of August 11 while in bed, she heard sounds from the backyard; in a chest of drawers she kept a gun she had owned for 10 years; she took out the gun, then fired 2 shots through the screen of her bedroom window to scare away any intruder; she went into the living room, awakened defendant and told him someone was in the backyard; they both went to the back door and stood in the doorway where she fired another shot straight up in the air. Defendant testified he stayed at the Barringer house some nights, that night Mrs. Barringer awakened him, he went to the back door with her and she opened the door and fired a shot while he stood by her side in the doorway; he denied he shot a gun or handled a gun that evening.

Appellant's main contention is that it was error to permit the prosecutor to cross-examine him and present rebuttal testimony regarding his earlier acts of possession of the same gun (exh. 3) because it was inadmissible, irrelevant matter outside the scope of direct examination.

On direct examination, defendant testified that he saw Mrs. Barringer fire the gun, but denied that he shot or handled the gun that night. On cross-examination, he testified, "That's really the first time I saw it [the gun] that night. That was it" then, over objection that the matter sought to be elicited was beyond the scope of direct examination, the prosecutor asked questions concerning, and defendant denied having carried the gun around in his pocket or owned, possessed or handled the gun, or within 27 days from July 15 to August 11 (the time he lived in the Barringer house) possessed the weapon or made any statement to Sanford about possessing the gun.

Rebuttal evidence consisted of further testimony of Carter and Sanford. Sanford testified that on the night of August 11, he did not see Mrs. Barringer on her porch and did not ever see her with a gun; a few

weeks before the shooting, defendant came over to his house and told him that his wife Grace had taken the gun and shot him; he got the impression that the gun belonged to defendant. A few days before August 11, defendant came over to his house and he saw the impression of a gun in defendant's rear hip pocket. Carter testified that on the night of August 11, he did not see Mrs. Barringer on the back porch at the time he saw defendant with the gun; that night he did not hear any noises or dogs barking from the Barringer backyard; a week before, he saw defendant in possession of a gun which appeared to be the same one as exhibit 3—he saw the exposed barrel of the gun in defendant's back pocket and asked him to turn the gun around, then saw the handle, too.

At the outset, appellant's contention raises the issue whether defendant's direct testimony constituted an implied denial of guilt of the charge. If it did, the prosecutor properly could seek to elicit on cross-examination any matter that tended to prove defendant's guilt in contradiction to his denial of guilt. (See Jefferson, Cal. Evidence Benchbook (1978 supp.) § 27.17, p. 285.)

Defendant's girl friend testified the gun was hers and it was she who held the gun and fired the shot on the back porch. In his direct testimony, defendant completely divorced himself from the gun placing it solely in the hands of his girl friend; then in answer to artfully conceived questions,[2] he denied shooting or handling a gun that night. Defense counsel thereby sought to limit cross-examination and bind the prosecutor to a time frame to preclude him from inquiring about any earlier possession of the gun. But he was not all that successful. █ Defendant expressly denied he handled or shot the gun that night and although he was not queried concerning his ownership or possession of the gun, we conclude[3] that by inference there flowed from defendant's express testimony an implied denial of the charge that on or about August 11 he owned and had in his possession a firearm. █ "An implied denial of guilt is considered as testimony denying the existence of any evidence relevant on the issue of guilt, which makes cross-examination about the subject of any such evidence properly within the scope of the direct ex-

[2]Defense counsel candidly told the trial court; "I was very careful not to, on direct examination, talk to this witness [defendant] about anything other than what happened in that very short period of time."

[3]In making this determination, we have considered defendant's direct testimony in light of his not guilty plea, Officer Moorbeck's testimony that defendant told him he had no gun on the premises, prosecution testimony of Carter and Sanford and defense testimony of defendant's girl friend.

amination. (See *People v. McClellan* (1969) 71 Cal.2d 793 [80 Cal.Rptr. 31, 457 P.2d 871]; *People v. Eisenberg* (1968) 266 Cal. App.2d 606 [72 Cal.Rptr. 390].)

"· · · · · · · · · · · · · ·

"The express or implied general denial of guilt by a defendant on direct examination constitutes a waiver of self-incrimination privilege to the extent of permitting cross-examination about facts indicating guilt even though evidence of such facts have not first been introduced by the prosecution in its case in chief. (*People v. Martin* (1971) 17 Cal.App.3d 661 [95 Cal.Rptr. 250]...*People v. Bagwell* (1974) 38 Cal.App.3d 127 [113 Cal.Rptr. 122]....)" (*People v. James* (1976) 56 Cal.App.3d 876, 888 [128 Cal.Rptr. 733].)

█ Having concluded that defendant's direct testimony constituted an implied denial of guilt of the charge, we must determine whether the evidence the prosecutor sought to elicit on cross-examination was relevant to the issue of guilt. We conclude that it was.

In *People v. James, supra*, 56 Cal.App.3d 876, the defense was alibi. Over objection, the prosecutor on cross-examination of defendant elicited evidence of certain conduct subsequent to the date of the crime, i.e., flight and absence from the state. The court held that defendant's alibi testimony constituted an implied denial of guilt and he thereby waived his self-incrimination privilege to the extent of permitting cross-examination about facts indicating guilt even though no evidence of such facts had been introduced by the prosecutor in his case in chief; from the evidence sought on cross-examination, the jury could draw the inference of consciousness of guilt, thus it became relevant on the issue of his guilt. In the case at bench, the evidence was sought by the prosecutor to establish that several days prior to August 11 defendant had carried the gun (exh. 3) in his hip pocket and several weeks before, he had talked to Sanford about the gun. However, unlike in *James, supra*, the prosecutor tried to offer this proof in his case in chief, but objection that it was irrelevant was sustained.[4] Actually the evidence was relevant on the issue of ownership and/or possession of the gun, but the trial court

---

[4]The prosecutor did ask Carter "Had you ever seen Mr. Goss before this time with a gun?" and he answered in the affirmative; when he asked Carter if he had seen defendant with a gun on previous occasions, the objection was interposed.

linked it with identification of defendant and the gun and said that inasmuch as Carter had identified the person who fired the gun as defendant, it was irrelevant "at the moment." The relevance of such evidence is apparent.

On count II the prosecutor had to prove the element of ownership and/or possession of the gun by defendant. Ownership, which alone is sufficient to support a conviction (*People* v. *McCullough* (1963) 222 Cal.App.2d 712, 718 [35 Cal.Rptr. 591]), can be shown by recent possession of the same weapon just before the date of the offense. Too, possession of a gun may be proved circumstantially (*People* v. *Neese* (1969) 272 Cal.App.2d 235, 245 [77 Cal.Rptr. 314]), and recent possession of the same gun by defendant several days before the offense is evidence from which the jury can draw the inference that in fact defendant owned and/or had possession of the gun on August 11. Although eyewitness testimony established defendant's possession of the gun on that night, there was no reason to preclude the prosecutor from offering additional evidence of a circumstantial nature relative to possession. In *People* v. *Neese, supra*, 272 Cal.App.2d 235, defendant was charged with possession of a gun on or about February 26; no witness saw him in possession of the gun on that date but the evidence showed that from February 7 to February 27, he had dominion and control over the gun and on various occasions had it in his possession. (272 Cal.App.2d at pp. 244-245.) Although the court held this sufficient to sustain the conviction on the theory of continuing control, *Neese* nevertheless establishes the relevance of prior possession.

These acts of possession by defendant of the same gun within several days of August 11 indeed were relevant to the issue of defendant's guilt as tending to prove (1) possession of the gun on August 11, and (2) identity of the one who shot the gun on that night. By his denial that it was he who handled or shot the gun, and his assertion that it was his girl friend who did so, defendant placed squarely in issue possession and identity. Thus, cross-examination of defendant concerning his prior recent possession of the same gun was proper as it tended to negate his direct testimony and its implied denial of guilt, and tended to cast doubt upon the supportive testimony of defendant's girl friend.

Inasmuch as the facts of prior possession were relevant to the issue of guilt, it "did not violate the evidentiary principle that cross-examination may not be undertaken to elicit denials for the purpose of producing an-

swers to be contradicted on matters which the prosecution could not properly prove independently of the denial testimony. (See *People* v. *Lavergne* (1971) 4 Cal.3d 735 [94 Cal.Rptr. 405, 484 P.2d 77].)" (*People* v. *James, supra,* 56 Cal.App.3d at p. 890.)

The evidence was proper rebuttal. The prosecutor made an aborted attempt to offer it in his case in chief, then sought to establish the evidence on cross-examination of defendant. The rebuttal evidence was properly introduced to meet specific points of dispute raised by the defense. (See *People* v. *Demond* (1976) 59 Cal.App.3d 574, 587 [130 Cal.Rptr. 590].)

■ The felony conviction alleged in count II was assault with a deadly weapon (§ 245, subd. (a), Pen. Code) on August 17, 1973. Prior to trial, defense counsel moved the court to limit the People's proof of the prior to show only that a felony had been committed because disclosure that it was an assault with a deadly weapon was prejudicial to his case on count I which charged him with the same kind of assault on Carter.[5] The court, noting that the prosecutor felt he had to prove the nature of the felony, added another factor—the reading of the information to the jury—whereupon defense counsel included in his motion a request to strike from count II that portion relating to the prior assault with a deadly weapon. The motion was denied.[6] On the authority of *People* v. *Sherren* (1979) 89 Cal.App.3d 752 [152 Cal.Rptr. 828], appellant cites this as error.

*People* v. *Forrester* (1931) 116 Cal.App. 240 [2 P.2d 558], is the first of a line of cases referred to by appellant which holds that in a prosecution under section 12021 the fact of the prior conviction even though admitted by defendant may be proved to the jury. The cases include *People* v. *Robles* (1970) 2 Cal.3d 205 [85 Cal.Rptr. 166, 466 P.2d 710]; *People* v. *McClellan* (1969) 71 Cal.2d 793 [80 Cal.Rptr. 31, 457 P.2d 871]; *People* v. *Morrison* (1977) 67 Cal.App.3d 425 [136 Cal.Rptr. 650]; and *People* v. *Faulkner* (1972) 28 Cal.App.3d 384 [104 Cal.Rptr. 625]. Following *People* v. *Faulkner, supra,* 28 Cal.App.3d 384, 393, *Morrison* held that where the prior conviction is an element

---

[5]The prejudice defense counsel urged on the court related only to count I; the jury acquitted defendant on that count.

[6]Defendant's probation officer testified to and produced file number A013513 (exh. 2 by reference); he further testified that he supervised defendant after his conviction of a violation of section 245, Penal Code, in 1973. Then the parties stipulated that file number A013513 reflects a conviction of defendant of a violation of section 245, subdivision (a), Penal Code, a felony, in 1973.

of the charged offense (possession of a firearm by a felon), the prosecutor is entitled to establish that fact before the jury even though defendant offered to stipulate thereto; "'[a] prosecutor is not required to stipulate to the existence of any elements of the crime he is attempting to prove where the stipulation will impair the effectiveness of the prosecutor's case....' (*People* v. *Robles* (1970) 2 Cal.3d 205, 213....)" (67 Cal.App.3d at p. 428.)

The most recent case following the *Forrester* line of cases is *People* v. *Black* (1979) 96 Cal.App.3d 846 [158 Cal.Rptr. 449]. We adopt the court's statement in *Black* at page 854: "We followed *People* v. *Faulkner, supra*, in our recent opinion, *People* v. *Morrison* (1977) 67 Cal.App.3d 425, 427-428 [136 Cal.Rptr. 650], and are not convinced by the arguments presented in appellant's brief nor in the recent case of *People* v. *Sherren* (1979) 89 Cal.App.3d 752 [152 Cal.Rptr. 828], to change our minds."[7]

Defendant was credited with 71 days spent in the county jail prior to sentencing to state prison. He claims he was also entitled to good time/work time credit for the county jail time. Pursuant to the Supreme Court decision in *People* v. *Sage* (1980) 26 Cal.3d 498, 506-507 [162 Cal.Rptr. 450, 606 P.2d 757], appellant is entitled to "conduct" credit, if earned, in addition to custody credit for the days during which he was detained in the county jail prior to his commitment to prison.

The judgment is affirmed and the cause remanded to the trial court for determination, in accordance with the views expressed in *People* v. *Sage, supra*, 26 Cal.3d 498, of the conduct credit to which defendant may be entitled for presentence confinement in county jail.

The judgment is affirmed.

Weisz, J.,* concurred.

**JEFFERSON (Bernard), P. J.**—I dissent.

I consider that the trial court erred in denying defendant's motion to preclude disclosure before the jury of the fact that the defendant had

---

[7]The issue is presently pending in the California Supreme Court in *People* v. *Hall*, Crim. 21070, hearing granted July 19, 1979. The Court of Appeal's opinion also rejected the rationale of *Sherren*.

*Assigned by the Chairperson of the Judicial Council.

been convicted of the felony offense of an assault with a deadly weapon even though that conviction was an essential element of the second offense charged against defendant—that the defendant was a felon in possession of a firearm. The error was of a prejudicial nature which mandates a reversal of defendant's conviction.

The majority relies for its position that no error was committed in permitting disclosure to the jury of defendant's conviction of the felony of assault with a deadly weapon on cases such as *People* v. *Morrison* (1977) 67 Cal.App.3d 425 [136 Cal.Rptr. 650]; *People* v. *Faulkner* (1972) 28 Cal.App.3d 384 [104 Cal.Rptr. 625]; and *People* v. *Black* (1979) 96 Cal.App.3d 846 [158 Cal.Rptr. 449]. The majority approves of the statement found in *Black* as follows: "We followed *People* v. *Faulkner, supra,* in our recent opinion, *People* v. *Morrison* (1977) 67 Cal.App.3d 425, 427-428 [136 Cal.Rptr. 650], and are not convinced by the arguments presented in appellant's brief nor in the recent case of *People* v. *Sherren* (1979) 89 Cal.App.3d 752 [152 Cal.Rptr. 828], to change our minds." (*Black, supra,* 96 Cal.App.3d 846, 854.)

It is my view that the *Morrison, Faulkner* and *Black* cases were clearly decided incorrectly. Their holdings are plainly untenable and indefensible. The *Faulkner, Morrison* and *Black* courts simply ignored the provisions of Evidence Code section 210. This section defines "relevant evidence" as evidence that has a "tendency in reason to prove or disprove any disputed fact" in an action. If a fact is *not* disputed, evidence offered to prove such fact is irrelevant since Evidence Code section 350 provides unequivocally that "[n]o evidence is admissible except relevant evidence."

It is significant that Evidence Code section 210 makes no exception for criminal actions. Its plain language makes evidence offered on an *undisputed* issue in any action—civil or criminal—irrelevant and hence inadmissible by the express provisions of Evidence Code section 350. In the case before us, the defendant expressly admitted that he had suffered the previous conviction of the felony of assault with a deadly weapon and by so doing removed from the action that one element of the offense defined by Penal Code section 12021. The *Faulkner, Morrison* and *Black* courts should have held, therefore, that Evidence Code sections 210 and 350 constituted a bar to the prosecution's disclosure to the jury that defendant had been convicted of the felony offense of an assault with a deadly weapon once he had conceded the existence of that element of the offense charged against him.

The *Faulkner, Black* and *Morrison* cases are contrary to the views set forth by the California Supreme Court in *Krouse* v. *Graham* (1977) 19 Cal.3d 59, 79 [137 Cal.Rptr. 863, 562 P.2d 1022], in which the court observed that "[e]vidence which is relevant only as to an issue which is not before the jury should be excluded."

*People* v. *Sherren* (1979) 89 Cal.App.3d 752 [152 Cal.Rptr. 828], is correct in its rejection of the views of the *Morrison* court and in its holding that it is prejudicial error to admit evidence that defendant is a convicted felon when defendant is willing to admit that fact as being an essential element of the prosecution's case.

Unfortunately, *Sherren* does not rely on Evidence Code section 210 for its correct holding. Instead, the *Sherren* court relies on cases holding that the element of *knowledge* of heroin may be removed from a criminal case by the defendant's concession of knowledge (*People* v. *Gonzales* (1968) 262 Cal.App.2d 286 [68 Cal.Rptr. 578]); and the petty theft with a prior petty theft conviction under Penal Code section 666 (*People* v. *Gallinger* (1963) 212 Cal.App.2d 851 [28 Cal.Rptr. 472]); and assault by a life prisoner (Pen. Code, § 4500; *People* v. *Robles* (1970) 2 Cal.3d 205 [85 Cal.Rptr. 166, 466 P.2d 710]).

The *Sherren* court recognizes that our courts have said that a defendant will not be permitted to admit some element of the prosecution's case and preclude the prosecutor from presenting evidence thereon if such a procedure constitutes an impairment of the effectiveness of the prosecution's case against a defendant or if such procedure results in softening the impact of the prosecution's evidence in its entirety.

I agree with the *Sherren* court in its disagreement with the *Morrison* court with respect to whether the removal of the issue of being a prior felon weakens the prosecutor's case against the defendant. I see no such weakening of the prosecution's case. On the contrary, what the prosecution seeks is the prejudicial effect and advantage of *irrelevant* evidence which the jury is apt to use against the defendant in an unwarranted and prejudicial manner to find that he was in *possession* of the firearm. In my view there exists the overriding factor that disclosure to the jury that defendant has suffered a prior felony conviction—in this case assault with a deadly weapon—represents an overwhelming prejudice to the defendant.

In addition, I disagree with the majority's view that the defense counsel's effort to keep the jury from knowing about the felony conviction of assault with a deadly weapon was based solely upon potential prejudice to defendant on count I, which was a charge of assault with a deadly weapon—an offense similar to the one involved in the prior conviction. I construe the record as also including an indication of prejudice on count II. I see no waiver involved in the right of defendant on this appeal to allege error with respect to the admissibility of this evidence as to count II.

The evidence as to defendant's possession and ownership of the firearm involved in the instant case was conflicting. The prosecution's case against defendant was far from overwhelming. Under these circumstances, the error of the trial court is magnified.

I would thus reverse defendant's conviction because my examination of the entire record convinces me that it is reasonably probable that a result more favorable to defendant would have been reached in the absence of the error discussed herein. (*People* v. *Duran* (1976) 16 Cal.3d 282, 296 [127 Cal.Rptr. 618, 545 P.2d 1322, 90 A.L.R.3d 1]; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

A petition for a rehearing was denied June 9, 1980, rule 27(e), California Rules of Court. Appellant's petition for a hearing by the Supreme Court was denied July 2, 1980.